A peremptory writ of mandamus is issued in the first instance only in case of a clear legal right on uncontested facts.

Application by the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway Company for a peremptory writ of mandamus directed to Charles T. H. Collis, commissioner of public works of the city of New York, commanding respondent to issue a permit for the opening of a certain street. Alternative writ awarded.

Edward Lauterbach (William H. Page, Jr., of counsel), for applicant.

Francis M. Scott, Corp. Counsel, for respondent.

RUSSELL, J. The railway company moves for a peremptory writ of mandamus to compel the respondent to issue a permit to open Amsterdam avenue, in the city of New York, between Seventy-First street and Manhattan street, in order to change the motive power of the railroad company from horse power to electricity. The application is resisted by the commissioner of public works upon public grounds. The decision of the motion was suspended by a proceeding before the board of railroad commissioners, to obtain a rehearing on the question of allowing the change of power, and by certiorari proceedings reviewing the determination of the railroad commissioners on such application in the appellate division and in the court of appeals. If that rehearing had been had, and the permission revoked by the railroad commissioners, the railway company would have had no standing to maintain this application for a mandamus. But the decision of the railroad commissioners that they have no power to grant a rehearing, or revoke the permission once given, has been sustained by the appellate division, Third department (51 N. Y. Supp. 781), and by the court of appeals June 24, 1898 (mem.), so that the application is unembarrassed by any possibility of withdrawal of the permission of the railroad commissioners.

There are four sets of railroad tracks on Amsterdam avenue between Seventy-First street and Manhattan street, two of which are operated by the Metropolitan Street-Railway Company, by electric power, and the other two by the Forty-Second Street Railway Company, by horse power. The disadvantage of the applicant railway company, therefore, in attracting custom, is apparent. It is also apparent that the permission to change this motive power is practically useless unless it may be permitted to make the necessary changes in its roadbed, to transform its motive power into the electric system, or run cars on the other tracks.

It is also strenuously insisted by the commissioner of public works that, owing to the condition of the sewers, water pipes, and other subterranean structures of the city in Amsterdam avenue, it will be practically impossible to allow the changes necessary for the maintenance of four sets of tracks for cars propelled by electricity; that the many children crossing the avenue to attend the several public schools upon the avenue will be in serious danger from cars being propelled by electricity on so many tracks; that it is perfectly feasible to operate all of the cars of the Forty-Second Street Company upon the tracks of the Metropolitan Street-Railway Company, thus avoiding the necessity of the use of four sets of tracks; that the operation of cars on so many tracks would interfere with the use of the fire en-

gines and apparatus of the fire department in times of serious emergency; and that the consent to the change of motive power, of the majority in value of the property owners upon that portion of the avenue sought to be affected, has not been obtained by the railway company.

The Forty-Second Street Railway Company derives its original power from a legislative grant to Isaac M. Walton and others, under chapter 825 of the Laws of 1873. By section 3 of that act the grantees are authorized to run on and over and intersect and use the tracks of any other railway company upon the streets and avenues referred to in the act, and, if compensation cannot be agreed upon for such use, the amount may be determined by condemnation proceedings in the usual way. The permission by the railroad commissioners was given subject to the lawful regulation of the local authorities, and the provision that all changes of underground structures should be under the direction of the commissioner of public works of the city, and at the expense of the company. Whether the permission of the railroad commissioners to change the motive power, and section 100 of the railroad law, directing that any railroad corporation making a change in its motive power may make any changes in the construction of its roads or roadbed or other property, rendered necessary by the change in its motive. power, confer any authority beyond that of empowering the corporation to do acts beyond the previous limit of its permissible corporate action, and under this language give it extended rights as against the property and privileges of third persons and municipalities, are material questions to be considered; so also is the further question as to whether a change is necessary, by the change of the motive power under the terms of the railroad law, which contemplates a subterranean conduit and excavation for the use of electricity upon two sets of tracks, when side by side with these tracks are two other sets of tracks which may be used under the proposed change of motive power. A peremptory writ of mandamus, however, can never be issued except in case of clear legal right, where the validity of the relator's claim is not disputed, and the allegations and inferences of fact which he presents to the court are not contested. People v. Wendell, 71 N. Y. 171; People v. Greene Co., supra, 64 N. Y. 600.

There are some questions of fact, direct as well as inferential, as displayed by the papers presented upon this application, which I should be perfectly willing to pass upon if I had a right to dispose of the question of a peremptory writ of mandamus upon balancing evidences, furnished by affidavits and probabilities, as to conclusions of fact, but which come within the direct line of disputed allegations and conclusions. Among them are the necessity of the proposed excavation and conduit under the terms of the railroad law and the necessities of the situation, the uses to which the avenue is devoted, the character of the uses of the buildings upon the avenue and adjacent to it, the feasibility of the use of the tracks of the Metropolitan Street-Railway Company, the situation of the subterranean structures of the city at present and for the near future, together with the question of fact as to whether a majority in value of the property owners have consented to a change in the motive power. The materiality of

these considerations, except as to that of the majority of the consents, is apparent by the opinion of the railroad commissioners, who, though impelled to deny the application for a rehearing on the ground of the want of power, still say, in view of their responsibilities in the discharge of their peculiar duties:

"After an inspection of the locality, it appears to us that the maintenance of four tracks in Amsterdam avenue is a burden on the thoroughfare, which, if it was an original proposition, should not be tolerated. The avenue is a broad one, but four tracks should never have been laid upon it. There was nothing in the physical aspect which precluded both lines of horse cars using the same tracks. The board believes there is nothing in such situation which would preclude the use of but one double track by cars operated by underground electricity."

Under such a presentation of the question by motion upon contested statements of fact, an alternative writ of mandamus should be issued, instead of a peremptory one. Let an order be presented accordingly. Ordered accordingly.